DOMENGEAUX, Judge.
Mrs. Levator Jones filed this suit to recover the sum of $3,750.00 with interest, penalties, attorney’s fees, and costs from World Insurance Company of Omaha, Nebraska. The plaintiff claims this amount to be due her as beneficiary of an accidental death policy issued by the defendant to her now deceased husband, Leon Jones. From a judgment in favor of the defendant — insurer, plaintiff has prosecuted this appeal.
By the terms of the policy in question, Leon Jones was insured against “loss of life . . . resulting directly and independently of all other causes from accidental bodily injuries received while this policy is in force . . .”
Leon Jones was at the time of his death 55 years of age and a resident of Florien, Louisiana. He worked at Fort Polk, Louisiana, and also owned a small farm about four miles west of Florien where he kept a few cattle and a mule belonging to a brother-in-law.
On August 4, 1972, at about 8 o’clock P. M. Jones drove home as usual from his farm. His wife noticed nothing unusual about the way her husband acted. He expressed no complaints of any nature, cleaned up, and ate supper. Afterwards he and his wife sat around talking, listening to the radio, and finally retired to bed about 10 o’clock P.M. During the early morning hours Mrs. Jones noticed her husband getting out of bed to go to the bathroom and returning, thereafter falling asleep. About 3 o’clock A.M. she was however awakened by her husband struggling in bed and breathing laboriously. When she was unable to arouse him Mrs. Jones immediately went for the aid of neighbors who immediately rushed him to a medical clinic in Many, Louisiana. Jones was transferred to the Veterans Administration Hospital in Shreveport, Louisiana, the next morning.
On admittance Jones was given a complete neurological examination by Dr. Juanita McBeath, a full-time physician employed with the Veterans Administration, and a specialist in neurology. Neurology, as explained by the doctor, is a medical science having to do with diseases of the brain and spinal cord. Jones was found to be in a light coma and unable to converse. In addition, an emergency lumbar spinal puncture indicated massive cerebral hemorrhaging and he was immediately placed in *453 intensive care. At approximately 6:40 P. M. on August 6 Leon Jones died unexpectedly. Doctor McBeath, who prepared the summary for the death certificate, indicated death as a consequence of subarachnoid hemorrhage (non-traumatic), or as explained to the court, bleeding into the lining around the brain. No x-rays were taken or autopsy performed.
About two or so weeks thereafter Monroe Collier testified that he stopped by the Jones’ residence and in so doing mentioned the fact that Leon Jones could have died as a result of the mule kick he had received. Mrs. Jones, hearing of this for the first time, pursued the matter and Collier allegedly explained that on the last evening Jones had been working he (Collier) had stopped by the farm to see about buying a yearling calf. It was his testimony that while feeding the livestock Jones was kicked in the right side by a mule, thereby falling forward and striking his head against a post. Collier stated thereafter that he helped Jones to his pickup and that Jones experienced dizziness for a short period. He did not however see blood or even a bruise on Jones’ forehead.
Mrs. Jones thereafter filed a claim on her husband’s insurance policy alleging the cause of his death to be accidental, inasmuch as he was allegedly kicked by a mule on August 4, causing him to fall and hit his head on a post. The defendant-insurer refused payment on the basis that no evidence of causal connection between the alleged injury and death was furnished. Subsequently this suit was filed.
The District Judge, in ruling for the defendant-insurer, found the testimony of Collier as to the occurrence of an injury unconvincing because of total lack of corroboration by other facts, as well as the countering testimony of Mrs. Jones that her husband’s activities the night before his demise were normal and that he didn’t even mention being kicked by a mule. In addition, he found the medical testimony to indicate that the insured died of non-traumatic subarachnoid hemorrhage and not as a result of any accident.
Doctor McBeath, the only physician called to testify, came to the conclusion that a blow to the head, as Jones allegedly received, did not cause the hemorrhage which led to his death. She indicated it was only a very rare possibility that such an occurrence could cause death such as found herein, i. e. about 1 in 500 to 1,000 cases. In her opinion a blow to the head would not have resulted in the cerebral aneurysmal rupture. In addition, she stated that this condition usually originates at birth and death is thereafter caused by an elevation in blood pressure. Further testimony pointed out that in cases of trauma as alleged herein, i. e. blow causing dizziness, there would generally be only minor bleeding and not the massive bleeding as indicated in the spinal fluid. She also stated that in cases of trauma one did not expect the patient to die so suddenly.
Thus, assuming arguendo that Jones in fact received the blow on the head as alleged, the medical testimony clearly preponderates to the effect that said blow was not causally connected with his death. The burden of proof was on the plaintiff-beneficiary to show that the insured’s death resulted from an accident, directly and independently of all other causes, as required in the policy. See Murphy v. Continental Casualty Co., 269 So.2d 507 (La.App. 1st Cir. 1972). The trial judge concluded that she failed to do so and we find no manifest error in his decision.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant’s costs.
Affirmed.